# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT BOWLING GREEN

**ROY ANDERSON CARVER, JR.**                                               **PLAINTIFF**

v.                                                              **CIVIL ACTION NO. 1:18-CV-164-JHM**

**THE COMMONWEALTH OF KENTUCKY** *et al.*                      **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff Roy Anderson Carver, Jr., initiated this civil rights action. Because Plaintiff is proceeding *in forma pauperis*, this Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2). For the reasons that follow, the action will be dismissed.

### I.

Plaintiff initiated this action by filing a 15-page complaint on a Court-supplied 42 U.S.C. § 1983 form (DN 1); a 30-page type-written "civil rights complaint" (DN 1-1); 73 pages of miscellaneous exhibits (DN 1-2); and a 93-page Memorandum in Support (DN 1-3).

On the complaint form, Plaintiff indicates that he is bringing this action against the following 23 Defendants - the Commonwealth of Kentucky; the Kentucky Department of Corrections (KDOC); KDOC Commissioner Rodney Ballard; the Warren County Regional Jail (WCRJ); WCRJ Jailer Jackie T. Strode; WCRJ Acting Jailer Stephen Harmon; Warren County Circuit Court Judge Steven Allen Wilson; the "Commonwealth of Kentucky's Prosecutor's Office"; Chief Prosecutor Christopher Cohron; Deputy Prosecutor Kimberly Georghagen; Deputy Prosecutor Kori L. Beck; Family Court Judge David C. Lanphear; the Kentucky Department of Public Advocacy (DPA); DPA Commissioner Damon Preston; DPA Director James Rohree; Public Defender Eric Clarke; the City of Bowling Green; Bowling Green Mayor Bruce Wilkerson; the Bowling Green Police Department (BGPD); BGPD Chief Doug Hawkins;

BGPD Patrolman David Bragg; and BGPD Patrolman Brock Messina. Plaintiff sues all Defendants in both their official and individual capacities.

The statement of facts in Plaintiff's complaint form largely contains legal conclusions and a broad statement of his claims. His type-written complaint appears to contain a more specific version of his factual allegations. The Court will therefore summarize the factual allegations of his type-written complaint for purposes of this initial review.

Plaintiff first alleges that on January 20, 2017, he was "vehicularly assaulted" by Phyllis M. Bailey. On January 23, 2017, Plaintiff was served with an "E.P.O." signed by Defendant Family Court Judge David Lanphear. Plaintiff alleges that at a hearing before Defendant Lanphear, Defendant Lanphear "openly engaged and advised assailant/stalker Phyllis Bailey to seek criminal sanctions against petitioner based on her false and deceptive medical claims entered as evidence" regarding the medical treatment she received at the Bowling Green Medical Center emergency room on January 21, 2017, at 3:00 a.m.

Plaintiff alleges that on or about February 15, 2017, "assailant/stalker Bailey contacted [Defendant BGPD] Officer Messina and again changed her story and account of events from the night of her . . . confrontation with petitioner to procure falsified narratives for a fraudulent manufactured indictment and evidence lacking without probable cause for a pure and genuine arrest of petitioner as retaliation from his appear with another female . . . ."[1]

Plaintiff states that on or about February 18, 2017, Defendant Messina arrived at the home of "petitioners' friend at approximately 1:30 a.m. in the morning awaking him from sleep

---

[1] The Pre-sentence Investigation Plaintiff attached to the complaint reflects that on January 21, 2017, Phyllis Bailey reported to Defendant Messina that she had been punched in the face by a "black male in his 40s or 50s" after he approached her vehicle on the road and she refused to give him a ride. After originally telling officers that she could not identify her attacker, on February 8, 2017, Bailey informed Defendant Messina that is was Plaintiff, her then boyfriend. On February 16, 2017, Bailey advised officers that the attack by Plaintiff had broken four bones under her left eye.

2

asking 'do you know Phyllis Bailey and can I come inside to look around your apartment?'"

Plaintiff alleges that on or about March 15, 2017, Defendant Commonwealth Attorney Cohron "impaneled a sworn grand jury to facilitate his collusion with and of the varying and inconsistent narratives of the assailant/stalker Phyllis Bailey's Lanphear court testimonies, her revised account of the previous information of the assault given to [Defendant Messina] and the sworn grand jury testimony given to present the false and manufactured evidence for felony warrant arrest of petitioner executed on April 1, 2017, and petitioner was taken and booked into the [WCRJ] by [Defendant] Messina."

Plaintiff alleges that the indictment and felony warrant "caused the [BGPD] by and thru BGPD Patrolmen [] Bragg and [] Messina to make unreasonable contact without reasonable probable cause with petitioner (20) days before their unnecessary, excessive, and unreasonable objective and or subjective assault and battery in bad faith and false imprisonment of his person stopping him" and "threatening to arrest him before forcibly removing him from a nondescript and unidentified friends' residence, and violently restraining him without probable cause."

Plaintiff next states that on or about April 3, 2017, he appeared before Defendant Circuit Court Judge Wilson and Defendant Commonwealth Deputy Prosecuting Attorney Georghagen for:

> arraignment hearing, mirandizing and advising the petitioner of his constitutional rights under Kentucky law in denying petitioner his Fourth Amendment due process rights and his Fourteenth Amendment equal protection of the law rights . . . to a fair and reasonable bond hearing through his loquacious interpretation and rhetoric for defiance to the commands of the United States Constitution in his unfounded and improper request for court order state disposition from Indiana law enforcement authorities from a 1986 case that his deputy prosecutor kept stalling to satisfy her desire to hold petitioner indefinitely and unlawfully in detention causing petitioner extreme emotional and mental distress . . . .

Plaintiff next alleges that on September 15, 2017, Defendant Judge Wilson "revoked petitioner's surety bond denying petitioner his Fourth Amendment due process rights and Fourteenth Amendment equal protection of the law rights . . . by and through ineffective assistance of appointed counsel Defendant Clarke's loyalty to the state and court not to challenge the state and court in any open court oral arguments against the surety bond revocation . . . ."

Plaintiff then states that on or about November 13, 2017, he "was taken to court for an unscheduled ALFORD PLEA offer the court itself in place of hearing the petitioner's MOTION TO DISMISS WITH PREJUDICE on the merits of ineffective assistance of counsel." He states that he "was denied his Motion Dismiss Without Prejudice and offered by the Court without assistance from [Defendant] Clarke's continuing and ongoing loyalty to the court and state to deny the petitioner his Fourth Amendment due process rights, Fifth Amendment rights against self-incrimination and Fourteenth Amendment equal protection of the law rights . . . ."

Plaintiff then alleges that on or about November 15, 2017, he was "taken to Court to sign the Courts Alford PLEA without assistance of his appointed counsel in the continuing and ongoing loyalty to the court and state . . . coercing petitioner to sign off on the Court's ALFORD PLEA DEAL for his immediate release from the unlawful detention . . . ."[2]

Plaintiff claims that "Defendants Judges, Prosecutors, [DPA], Lawyers, and [BGPD] Officers intentionally or recklessly humiliated Petitioner by orchestrating multiple court hearings and criminal charges to cover up the state conspired civil rights deprivation schemes to excessively and unnecessarily physically injure petitioner in the aide of conspiracy to destroy petitioners' registered business in Indiana in its relocation move to Kentucky."

---

[2]Based upon a review of the state court documents Plaintiff attached to his complaint, it appears that he was charged with second degree assault and being a persistent felony offender in the first degree on March 15, 2017. It further appears that the second-degree assault charge was amended down to first-degree wanton endangerment and that Plaintiff entered a guilty plea to this charge on November 15, 2017, before Defendant Judge Steve Wilson.

4

Plaintiff next alleges that WCRJ Jailer Strode and Acting Jailer Harmon:

> Condone and encourage policies for inadequate medical and non-mandatory 72 hour medical and dental quarantine services and treatment at their jail facility first starting at their intake/booking procedures failing in the detection, intervention and prevention of life threatening contagious communicable diseases by all persons classified and designated by the CENTERS FOR DISEASE CONTROL as ALL PEOPLE ALL DANGEROUS (APAD), pretrial detainees, prisoners, control release prisoners, transferees and the jailers' employees from undetected and undiagnosed HIV/AIDS and HIV/AIDS related disease carrier inmates and repeat offenders and tuberculosis transmission among undiagnosed inmates, in violation of [various federal statutes], exposure from human mule traffickers, nutritionally inadequate meals and dietary programs, lack of proper inmate exercise and recreation equipment and poor inadequate ventilation and living conditions.

Plaintiff seeks compensatory and punitive damages as well as declaratory and various forms of injunctive relief.

## II.

On review under 28 U.S.C. § 1915(e), a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as

5

true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

### A. 42 U.S.C. § 1983 Claims

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Court will attempt to analyze Plaintiff's multitude of claims in the manner he presented them in his § 1983 complaint form and his type-written complaint.

6

### 1. Claims Related to the Judicial Process

#### a. Defendants Commonwealth of Kentucky, State Agencies, and Official-Capacity Claims against State Officers

Plaintiff writes that "Count 1" of his complaint is his § 1983 claim against Defendants "COMMONWEALTH OF KENTUCKY a.k.a. the 8th Judicial District" for customs and policies that violated his constitutional rights. Plaintiff states that the customs and policies of the "8th Judicial District," in failing to use reasonable care in the hiring and oversight of Defendants Cohron and Georghagen and other prosecutors demonstrates deliberate indifference to his constitutional rights.

Plaintiff also argues that the "Commonwealth of Kentucky is liable for the assault, battery, and false imprisonment committed against Petitioner by Defendant Lanphear, Wilson, Cohron, and Georghagen" under a theory of *respondeat superior*.

Moreover, Petitioner argues that the "Commonwealth of Kentucky, the 8th Judicial Circuit falsely imprisoned Petitioner by unlawfully detaining him for trial against his will. Defendant Commonwealth of Kentucky had no reason to obtain a felony warrant based on the fraudulent and manufactured narratives and that testimonial evidence given under oath . . . because they did not believe that Petitioner had committed an offense."

The Court first observes that Plaintiff's claim against Kentucky's Eighth Judicial District, which serves Warren County, fails because "[a] state court is not a 'person' for purposes of 42 U.S.C. § 1983 and hence is not subject to lawsuit under that statute." *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997).

Plaintiff's claims against the Commonwealth of Kentucky, the "Commonwealth of Kentucky's Prosecutor's Office," and the DPA also fail because the Eleventh Amendment[3] "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments," *Thiokol Corp. v. Dep't of Treasury, State of Mich.*, *Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993), unless Congress has validly abrogated the state's immunity or the state has waived its immunity. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states. *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).

The "[Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, Plaintiff's official-capacity claims for damages are also barred against Judges Lanphear and Wilson, as well as Prosecutors Cohron, Georghagen, and Beck.

Finally, the Court observes that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

For all of these reasons, Plaintiff's claims against the Eighth Judicial District, the Commonwealth of Kentucky, the above-referenced state agencies, and the official-capacity

---

[3] The Eleventh Amendment to the United States Constitution provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the amendment does not address the possibility of suit against a state by one of its own citizens, unassailable case law has interpreted the amendment in such a way as to close that gap." *Barton v. Summers*, 293 F.3d 944, 948 (6th Cir. 2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

claims against Defendants Lanphear, Wilson, Cohron, Georghagen, and Beck will be dismissed because they are barred by the Eleventh Amendment and fail to state a claim upon which relief may be granted.

### b. Defendant Judges Lanphear and Wilson

Plaintiff alleges that on January 30, 2017, Defendant Family Court Judge Lanphear "did during open court proceedings advise assumed victim Phyllis Bailey to go to the Warren County Prosecutor's prejudicially with baised and frailty of her multiple variations of account facts before an impaneled Grand Jury to obtain an indictment and felony warrant to arrest petitioner."

Plaintiff claims that Defendant Judge Wilson:

> by his judicial administration authority did violate petitioner's Fourth, Fifth, Sixth, Eighth, Thirteenth, Fourteenth, and Fifteenth Amendment Rights when he prejudicially, objectively and or subjectively interfered with petitioner's Due Process of Law Rights and Equal Protection of the Law Rights" on numerous dates "while encouraging determination of state malicious prosecution and ineffective assistance of counsel at petitioner's criminal arraignment, appointment of public advocate attorney, pre-trial conference hearings on petitioner's motion for production of evidence hearing, petitioner's motion for dismissal with prejudice hearing and petitioner's forced colloquy hearings for immediate release from detention.

Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997) (citing *Mireles v. Waco*, 502 U.S. 9 (1991)). Judicial immunity is embedded in the long-established principle that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335. 347 (1872)). Thus, a judge is subject to liability only for non-judicial actions or for acts which were judicial in nature but were taken in the "clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. at 11-12; *Ireland v. Tunis*, 113 F.3d at 1440. Whether or not an act is judicial depends on the nature and function of

the act. *Ireland v. Tunis*, 113 F.3d at 1440. Two factors are examined to perform this analysis. *Id.* at 1441. The Court must first determine whether the act is "a function normally performed by a judge." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. at 362). The Court must also look at "whether the parties dealt with the judge in his or her judicial capacity." *Id.* Moreover, a judge acts in clear absence of all jurisdiction only if the matter acted upon is clearly outside the subject matter jurisdiction of his court. *Id.*; *King v. Love*, 766 F.2d 962, 965-66 (6th Cir. 1985); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984). Acting in error, maliciously, or in excess of his authority is not enough. *Stump v. Sparkman*, 435 U.S. at 356.

The factors used for this functional analysis indicate that the alleged acts by Defendant Judges Lanphear and Wilson are actions normally performed by judges and that they dealt with Plaintiff in their judicial capacities only. Further, the complaint gives no indication that either Defendant Judges Lanphear or Wilson lacked jurisdiction in presiding over Plaintiff's cases. Thus, the Court finds that they are entitled to judicial immunity and, therefore, will dismiss all claims against them.

### c. Defendant Prosecutors Cohron and Georghagen

Plaintiff alleges that Defendant Commonwealth Attorney Cohron:

impaneled a sworn grand jury to facilitate his collusion with and of the varying and inconsistent narratives of the assailant/stalker Phyllis Bailey's Lanphear court testimonies, her revised account of the previous information of the assault given to [Defendant Messina] and the sworn grand jury testimony given to present the false and manufactured evidence for felony warrant arrest of petitioner executed on April 1, 2017, and petitioner was taken and booked into the [WCRJ] by [Defendant] Messina.

Plaintiff claims that Defendant Georghagen:

while acting under color of state law in her determination to win an conviction judgment against petitioner thru malicious prosecution did objectively and or subjectively violate petitioner of his Fourth, FIFTH, SIXTH, THIRTEENTH, FOURTEENTH, and Fifteenth Amendment rights" on multiple dates "thru her

10

determination for malicious prosecution and ineffective assistance of counsel at petitioner's criminal arraignment, appointment of public advocate attorney, pre-trial conference hearings, petitioner's motion for production of evidence hearing, petitioner's motion for dismissal with prejudice hearing and petitioner's force colloquy hearings for immediate release from detention and continues to do so.

These allegations are not sufficient to state a claim against either Defendant Cohron or Georghagen. This is because prosecutors are entitled to "absolute immunity from civil liability related to their performance of 'prosecutorial' functions.'" *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "Functions that serve as an 'integral part of the judicial process' or that are 'intimately associated with the judicial process' are absolutely immune from civil suits." *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "[D]eciding to initiate a prosecution is subject to absolute immunity." *Howell v. Sanders*, 755 F. Supp. 2d 789, 796 (E.D. Ky. 2010), *aff'd*, 668 F.3d 344 (6th Cir. 2012) (citing *Imbler*, 424 U.S. at 431). In addition, "[p]lea bargains are 'so intimately associated with the prosecutor's role as an advocate of the State in the judicial process as to warrant absolute immunity.'" *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012) (quoting *Cady v. Arenac Cty.*, 574 F.3d 334, 341 (6th Cir. 2009)). Moreover, "[a]s the line of absolute-immunity cases make[s] clear, . . . a prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state." *Cady v. Arenac Cty.*, 574 F.3d at 341; *see also Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989) (holding that prosecutors were absolutely immune from claims alleging that they conspired to knowingly bring false charges despite claims of failure to investigate facts and alleged commission of perjury before the grand jury).

Nothing in the complaint suggests that Defendants Cohron and Georghagen were acting in any capacity other than in their roles as advocates for the state in the judicial process involving

11

Plaintiff. Therefore, Plaintiff's claims against them are barred by prosecutorial immunity and will be dismissed.

### d. Defendants DPA Commissioner Preston, DPA Director Rohree, and Public Defender Clarke

Plaintiff claims that these Defendants violated his rights by providing ineffective assistance of counsel "in their determination to conspire against his rights objectively and subjectively did violate petitioner's Fourth, Fifth, Sixth, Eighth, Thirteen, Fourteenth, and Fifteenth Amendment Rights" on various dates. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Plaintiff's claim is completely devoid of factual matter that would allow the Court to draw a reasonable inference that these Defendants engaged in a conspiracy to violate his constitutional rights. Plaintiff does not plead the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

Plaintiff also alleges that Defendant Clarke violated his rights when he "refused to represent the petitioner during his pre-trial motions and hearings and his forced release colloquy plea hearings for his immediate release from detention." However, it is firmly established that a defense attorney, regardless of whether he is a public defender or private attorney, is not a state actor for purposes of § 1983. *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("A lawyer representing a client is not, by virtue of being an officer of the

court, a state actor under color of state law within the meaning of § 1983."). Although an exception exists if a defense attorney has engaged in a conspiracy with state officials to deprive another of federal rights, *Tower v. Glover*, 467 U.S. 914, 920-23, (1984), as discussed above, Plaintiff's allegations are too vague to state a viable conspiracy claim. Thus, the Court will dismiss Plaintiff's claims against Defendant Clarke for failure to state a claim upon which relief may be granted.

## 2. Claims Related to Plaintiff's Arrest and Detention

### a. All City of Bowling Green Defendants

Plaintiff next claims that Defendants City of Bowling Green, Bowling Green Mayor Wilkerson, the BGPD, BGPD Chief Hawkins, and BGPD Officers Bragg and Messina violated his rights through "excessive, objective and/or subjective assault and battery . . . and false imprisonment and detention" and "denying him proper and adequate medical attention immediately for his injuries and bruising violating his rights against unreasonable search and seizure and cruel and unusual punishment."

The Court cannot discern any claim against these Defendants based upon these conclusory statements. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Therefore, any claims Plaintiff has attempted to set forth in the above statements will be dismissed for failure to state a claim upon which relief may be granted.

**b. Defendants City of Bowling Green and BGPD**

Plaintiff also claims that the City of Bowling Green and the BGPD are liable to him because, among other things, they "developed and maintained policies or customs exhibiting deliberate indifference" and failed to adequately hire, train, and supervise their police officers, including Defendants Bragg and Messina. Plaintiff also claims these Defendants are liable to him under a theory of *respondeat superior.*

These claims fail because Plaintiff alleges no facts from which the Court could infer the existence of any specific policy or custom officially adopted and promulgated by the City of Bowling Green, or the role of such a policy in any alleged constitutional violation.[4] Indeed, the bare legal conclusions set forth above regarding customs, policies, and a failure to train do not provide a basis upon which the Court may determine that Plaintiff has asserted a plausible § 1983 claim against the City of Bowling Green. *See, e.g.*, *Crawford v. Geiger*, 996 F. Supp. 2d 603, 613 (N.D. Ohio 2014) (finding that failure to plead facts about a specific government policy was insufficient to support the existence of such a policy and to therefore state a municipal liability claim under *Twombly* and *Iqbal*) (citing *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 372-373 (6th Cir. 2011) ("vague and conclusory allegations and arguments" are insufficient to support the existence of a policy)); *Barrett v. Wallace*, 107 F. Supp. 2d 949, 955 (S.D. Ohio 2000) (conclusory allegations of inadequate policies are insufficient to state a municipal liability claim under § 1983) (citations omitted).

Finally, "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior

---

[4] Plaintiff's claims against the BGPD are actually against the City of Bowling Green. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.").

theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).

For these reasons, Plaintiff's § 1983 claims against Defendants City of Bowling Green and the BGPD will be dismissed for failure to state a claim upon which relief may be granted.

### c. Defendants BGPD Officers Bragg and Messina

The Court next turns to Plaintiff's specific claims against Defendant BGPD Officers Bragg and Messina. The Court construes the complaint as attempting to state claims against these Defendants for unreasonable search and seizure, excessive force, false arrest, and false imprisonment based upon events that occurred between February 2017 and April 3, 2017, the date that Plaintiff indicates that he was arraigned.

"The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Although the statute of limitations is an affirmative defense, a court may raise the issue *sua sponte* if the defense is obvious from the face of the complaint. *Fields v. Campbell*, 39 F. App'x 221, 223 (6th Cir. 2002) (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988)).

Though the applicable statute of limitations is determined by state law, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson*, 510 F.3d at 635 (citing *Kuhnle Bros., Inc.*, 103 F.3d at 519); *see also Wallace v.*

15

*Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law.") (emphasis omitted). Generally, federal law prescribes that accrual occurs "when the plaintiff has 'a complete and present cause of action" that is, when 'the plaintiff can file suit and obtain relief.'" *Id*. (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

The Sixth Circuit has recognized that claims for unlawful search and seizure accrue at the time of the alleged search and seizure. *See Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008). Moreover, "state law claims for false arrest and false imprisonment, which constitutes a single cause of action in Kentucky when law enforcement is involved, as well as assault and battery arising out of an arrest, generally accrue at the time of the arrest." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 594 U.S. at 397; *see also Fox*, 489 F.3d at 233 ("A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest," and "a claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends.").

Based upon the above case law and Plaintiff's allegations, Plaintiff's claims against Defendants Bragg and Messina for unreasonable search and seizure and excessive force accrued on the dates they occurred between February and April 2017, and Plaintiff's claims for false arrest and false imprisonment accrued no later than April 3, 2017, the date Plaintiff indicates he was arraigned. Thus, because Plaintiff did not file the complaint in this action until November

14, 2018, more than six months after the applicable one-year period would have expired, Plaintiff's claim's against these Defendants are time-barred and will be dismissed as frivolous.

### 3. Claims Related to Plaintiff's Conditions of Confinement

Plaintiff claims that Defendants KDOC Commissioner Ballard, WCRJ, WCRJ Jailer Strode, and WCRJ Acting Jailer Harmon violated his:

> Eighth Amendment rights against cruel and unusual punishment by inadequate medical detention care of pretrial detainees in violation of the Prison Reform Act PLRA, the Corrections Officers Health and Safety Act, the Americans with Disabilities Act, for screening of life threatening communicable infections from HIV/AIDS, HIV/AIDS related cancers, Tuberculosis, and Hepatitis A,B, and C before entry into prisoner population pursuant to KRS 438.250 and continue to do so.

Plaintiff's argument seems to be that these Defendants are liable because they failed to perform certain medical screenings on inmates. However, because Plaintiff does not allege that he suffered any harm as a result, the Court will also dismiss these claims for failure to state a claim upon which relief may be granted. *See, e.g.*, *King v. Deskins*, No. 99-6381, 2000 U.S. App. LEXIS 19509, at *4 (6th Cir. Aug. 8, 2000) ("A speculative injury does not vest a plaintiff with standing . . . .")

### B. Other Federal Claims

To the extent that Plaintiff claims that other Defendants have violated his rights under 42 U.S.C. § 1983 or that any Defendant has violated any other federal statute, the Court can discern no such claim based upon Plaintiff's allegations.

### C. Injunctive Relief

Finally, the Court notes that Plaintiff seeks various forms of injunctive relief, including "a preliminary and permanent injunction prohibiting the defendant's 8th Judicial Circuit and Commonwealth of Kentucky from their further physical enforcement of KRS Statutes

508.020(1) Assault 2nd Degree; KRS 508.060(1) Wanton Endangerment First Degree and KRS 55.050(d) Flagrant Non-Support to harm and injure Plaintiff."

To the extent that through seeking this relief, Plaintiff seeks to avoid the punishment imposed upon him for his convictions, such relief is not available under § 1983. *Heck v. Humphrey*, 512 U.S. 477, 481(1994) ("[H]abeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come with the literal terms of § 1983"). "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).[5]

Therefore, this claim for relief must be dismissed for failure to state a claim upon which relief may be granted.

### D. State-Law Claims

Finally, because Plaintiff's federal-law claims will be dismissed, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, Plaintiff's state-law claims will be dismissed without prejudice.

---

[5] The Court notes that it appears Plaintiff has already filed a 28 U.S.C. § 2254 habeas petition in this court challenging his conviction for wanton endangerment. *See Carver v. Commonwealth Dep't of Corr.*, No. 1:18-cv-27-GNS. The petition was dismissed on May 29, 2018, for failure to exhaust state remedies. *Id.* (DNs 9 & 10).

## IV.

For the foregoing reasons, this action will be dismissed by separate Order.

Date: February 1, 2019

*Joseph H. McKinley*

Joseph H. McKinley Jr., District Judge
United States District Court

cc: Plaintiff, *pro se*
   Defendants
4414.011